## The Jacksonville Journal Company
### v.
## Mollie Beymer.

*Libel—Slander—Sec. 1, Chap. 126, R. S.—Innuendo—Damages.*

1.  Sec. 1, Chap. 126, R. S., is applicable to verbal slander only.

2.  The legislature of this State having made actionable the speaking of words importing unchastity, when the defamation is verbal merely, the words must in their common acceptation amount to such a charge in order to render them actionable *per se*.

3.  If the publication tends to impeach the virtue or reputation of a given party, the cause of action for a libel is complete.

4.  To say that a married woman " has run off with another fellow," is sufficient to convey the impression that she was guilty of adultery.

5.  Where language is ambiguous only, capable of being understood in a double sense, one very damaging, the other comparatively harmless, a publisher can not object that his readers gave it the sinister meaning.

6.  The admission of testimony going to show what is clear enough without it, can not be complained of.

7.  This court will not ordinarily interfere with the finding of the jury in such cases.

### [Opinion filed December 3, 1891.]

Appeal from the Circuit Court of Morgan County; the Hon. G. W. Herdman, Judge, presiding.

Messrs. Morrison & Whitlock and O. A. DeLeuw, for appellant.

An innuendo can not extend the meaning of defamatory matter unless by reference to matter of inducement. The innuendo must be supported by the inducement. * * * The word forsworn can not, by innuendo alone, be interpreted perjury. Thus when the allegation was " John Holt hath forsworn himself" with innuendo of perjury, after verdict for the plaintiff judgment was arrested because the innuendo was unwarranted by any inducement. Townshend on Libel and Slander, Secs. 341, 342. This doctrine has been fully recognized and enforced by both the Supreme and Appellate Courts of this State. As far back as the case of Patterson v. Edwards, 2 Gilm. 720, it was fully recognized. In that

case the defendant charged the plaintiff with "having raised a family of children by a negro," words which would be held of the highest slanderous nature, but the court (page 723) say : "We also think the third error well assigned. The declaration and all the various counts thereof are substantially defective. Our statute provides that words falsely published which, in their common acceptation, shall amount to charge any person with having been guilty of fornication or adultery, shall be deemed actionable. We are, however, of the opinion that the words spoken, viz., 'Mrs. Edwards has raised a family of children by a negro,' do not, in their plain and popular sense, or in common acceptation, necessarily amount to a charge of fornication or adultery, unconnected with other circumstances, which the pleader ought to have averred by way of introduction or colloquium, and to which, by proper innuendoes, he ought to have referred the words. * * * The innuendo that defendant thereby meant to charge plaintiff's wife with fornication and adultery, can not supply the defect. The office of an innuendo is to explain, not to extend what has gone before; it can not enlarge the meaning of words, unless it be connected with some matter of fact expressly averred."

The same doctrine was enforced in the case of Strader v. Snyder, 67 Ill. 404. That case like the case at bar grew out of a publication in a newspaper. A negro child whose mother was living as a servant at the house of the plaintiff had died and was buried in the public cemetery, and it seems that some turbulent opposition had arisen against its sepulture, and the publication, out of which the suit sprang, was a result of this. Among other things in this publication to which objection was made by the plaintiff, was, that on speaking of the plaintiff and this child it spoke of this child as his "miscegen" and as his "production." A verdict was found for the plaintiff upon which a judgment was rendered by the court, which, on appeal, was reversed. The court saying (page 412), "It is quite too plain for argument, that the words set out do not, in their common acceptation, and without the aid of extrinsic matters, impute to plaintiff the charge of adultery, much less with the negro woman to whom they are alleged to apply."

To the same effect see Koch v. Heideman, 16 Ill. App. 478. In this case a clergyman in speaking of a lady parishioner of his at a public meeting said of her under circumstances full of insinuations, "that she had been seen laying on a lounge with a male boarder." In this case the court say, "The latter," the words used, "impart only a fact which, though very discreditable to appellee, may be quite distinct from an act of adultery, and does not 'necessarily,' as the Supreme Court says in Edwards v. Patterson, 2 Gilm. 723–4, or with reasonable certainty imply it—a fact which admits of proof to the full extent stated in entire consistence with further proof that adultery was not committed in any connection with it, as cause, concomitant or sequence. The statement of it, therefore, can not of itself amount to the charge of adultery, and since nothing further is averred or shown to give it a broader or different meaning in this case, the judgment should have been arrested. And if, though not of themselves bearing the meaning imputed by the innuendo, they were under any circumstance capable of it, and the jury found that in this case they did, then their finding should have been set aside as wholly unsupported by the evidence."

Messrs. OWEN P. THOMPSON and CHARLES A. BARNES, for appellee.

Appellants insist that the court erred in permitting witnesses to testify as to what they understood was the common acceptation of the words and language used in the article complained of. We fail to see any force in the argument, as the law is now well settled in this State, that, in actions of this kind, the testimony of those who have heard or read the words spoken or published is admissible for the purpose of showing how they were understood. After a thorough review of the authorities, both English and American, our Supreme Court, in the case of Nelson v. Borchenius, 52 Ill. 236, having this question under consideration, say that the weight of authority and the sounder reason are adverse to the position that the jury should determine in what sense the words were used without any aid from the testimony of witnesses as to the sense in which they understood them. It is there said:

"The essence of the injury is the effect created by the slander upon the minds of the hearers." Again: "In cases of this kind the impression made upon the minds of the hearers goes to the gist of the action, and hence, a slander in a language unknown to the bystanders is not actionable." See also Smart v. Blanchard, 42 N. H. 146; Smith v. Miles, 15 Vt. 245; Burton v. Holmes, 16 Iowa, 252; Smawley v. Stark, 9 Ind. 386.

Where it is alleged that words spoken and claimed to be slanderous have a certain meaning, the plaintiff may call a witness to show that he so understood them. De Armond v. Armstrong, 37 Ind. 35; Hankins v. Bilby, 16 M. & W. 442.

WALL, J. This was an action on the case by appellee against appellant for the publishing of the following article in the columns of the Journal, a daily newspaper.

"DESERTED BY HIS WIFE."

"Florence Beymer, the well known deaf barber, is playing in hard luck. His wife has run off with another fellow, and yesterday he was fined $10 and costs for an assault on the woman's mother. He is in a terrible stew about it all, of course. For the past year his wife has been playing high jack whenever she chose, and her continued escapades with other men have made her husband as jealous as a dozen ordinary men, but he has grinned and borne all his troubles with the grace of a saint and the imperturbability of an Indian. Now, however, he is in tureen deep. Beymer insists that he did not commit the assault for which he was fined, but the court seems to have thought differently."

Upon a trial by jury the plaintiff obtained a verdict for $1,300. A motion for a new trial was overruled and judgment rendered on the verdict, from which an appeal was prosecuted by the defendant.

It is first urged by the appellant that the court erred in overruling the demurrer to the special pleas. There seems to have been some irregularity and confusion in the pleadings. The defendant evidently did not regard the special pleas as being good, but desired to carry the demurrer back to the declaration, and for this purpose withdrew the general issue. When the demurrer to the special pleas was sustained, leave

was obtained to file additional special pleas, which were also held bad on demurrer, and then the general issue was again filed upon which the case was tried.

We do not understand the appel'ant to contend very seriously that the pleas were good; at least, the brief does not so insist, but the real position is that the declaration was bad.

The objection to the declaration now presented is, that by *innuendo* the pleader seeks to give additional force and meaning to the language employed; that instead of merely explaining, the object and effect is to enlarge and change the meaning. The proposition, in other words, is, that while the article merely charges indiscreet and improper conduct, and nothing more, yet the pleading distorts and magnifies it to signify and charge the greatest offense that a wife can commit as against her husband.

Both parties seem to have considered the case as though governed and affected by Sec. 1 of Chap. 126, R. S., which provides that "if any person shall falsely use, utter or publish words which, in their common acceptation, shall amount to charge any person with having been guilty of fornication or adultery, such words so spoken shall be deemed actionable, and he shall be deemed guilty of slander."

The plaintiff was permitted to prove by witnesses that they read the article and understood it to import a charge of adultery. The defendant was permitted to prove by witnesses that in their opinion no such meaning should be attached to the article.

At the instance of the plaintiff the court instructed the jury that if the article did amount to such a charge it was actionable; and at the instance of the defendant, the jury were instructed that unless it did import such conduct it was not actionable.

We regard this provision of the statute as applicable to verbal slander only. At the common law such a charge when orally made was not actionable *per se*, because the misconduct charged was not indictable. After the Restoration in England, as Blackstone says, Vol. 4, page 65, "The temporal courts took no cognizance of adultery otherwise than as a private injury." So in some of the States it was held not indict-

able at common law (Wharton's Crim. Law, Sec. 2648), nor was it in this State. But without the statutory provision in question, it was actionable to print such a charge.

The definition of libel as found in our criminal code is substantially that found in the text books, and is as follows:

"A libel is a malicious defamation expressed by printing or by signs or pictures or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or to publish the natural defects of one who is alive, and thereby to expose him to public hatred, contempt, ridicule or financial injury."

For such offense the public may proceed criminally, and the person injured may bring an action. It is not necessary now to discuss the difference between libel and slander, or the considerations upon which it has been adjudged that matter which is not actionable *per se* when published orally, may be when published by printing, signs and pictures. The legislature saw fit to make actionable the speaking of words importing unchastity; but when the defamation is verbal merely, the words must, in their common acceptation, amount to such a charge in order to render them actionable *per se*. Not so, however, in libel; for if the publication *tends to impeach the virtue or reputation* the cause of action is complete. It would hardly be urged that this publication was not libelous. The most unsophisticated person would at once infer that the woman mentioned was guilty of a gross breach of propriety, tending to cloud the reputation and to impeach the virtue. The very innocent construction placed upon the language by the publishers of the paper in their testimony would make it signify enough for this.

But we think the article would be commonly construed to mean that she was guilty of adultery. To say that a married woman "has run off with another fellow" is sufficient to convey that impression; and this in connection with the other expressions there found would leave no doubt that such was the writer's meaning.

But if the language is ambiguous only, capable of being understood in a double sense, one very damaging, the other comparatively harmless, the publisher can not object that his

readers gave it the sinister meaning.   Nelson v. Borchenius, 52 Ill. 236.   As the article was libelous on its face, the declaration would have been sufficient in this respect if it had simply set it out *in haec verba.*   The effort to explain or enlarge the meaning by innuendo, does not in any event render the pleading substantially defective.

The objection urged with great force, that there was error in permitting witnesses to state what they understood the article to mean, must be overruled, unless we can say that the meaning is obviously innocent, and that the sinister construction given it by those witnesses is unreasonable and intolerable.   As already stated, we can not say it is so, but are so strongly impressed with the view that it imported adultery according to the common acceptation of the language, that we think such testimony might well have been excluded for the reason that no other construction was admissible.   But the testimony did no harm, for it only tended to show what was clear enough without it.

The view we have thus taken will also dispose of the objection to instructions given at the instance of the plaintiff.

As to the amount of damages allowed, it may be said in answer to the objection in that behalf, that it is a matter so largely within the discretion of the jury as to forbid our interference in this instance.   Very much larger verdicts have often been sustained in cases of oral slander.   Where the defamation is through the columns of a newspaper the injury is greater—at least it is so presumably.

The defendant company sought to mitigate the damages by showing that the reputation of the plaintiff was bad.   Evidence was heard as to this point on both sides.   The jury no doubt gave proper weight to the testimony of the various witnesses, and the presiding judge who also heard the testimony was satisfied with the verdict.   There is nothing to indicate passion, partiality or prejudice in the sum awarded.

Finding no error of which appellant may be heard to complain, we must affirm the judgment.

*Judgment affirmed.*