## Charles Hunner, Plaintiff in Error, v. Evening American Publishing Company, Defendant in Error.

### Gen. No. 17,573.

1. LIBEL AND SLANDER—*ordinary construction should be given article.* In interpreting the language of an article to determine whether or not it is libelous, no different construction should be placed upon it than men of ordinary affairs would give it.

2. LIBEL AND SLANDER—*article need not technically charge crime.* It is not necessary that an article or publication shall technically charge a crime if the language used induces readers reasonably to believe that a crime or wrong has been committed.

3. LIBEL AND SLANDER—*when publication charges adultery.* Where a newspaper publishes an article regarding the divorces in an "auto set" in a city, and falsely states that plaintiff was divorced by his wife, who named women in her bill, the publication charges adultery and is libelous *per se.*

4. LIBEL AND SLANDER—*effect of publication charging adultery.* When a publication charges adultery it is libelous *per se*, and no colloquium, inducement, or innuendo is necessary.

Action for libel. Error to the Superior Court of Cook county; the Hon. WILLIAM H. McSURELY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed December 3, 1912.

JOHNSON & BELASCO and ALSCHULER, PUTNAM & JAMES, for plaintiff in error.

ROY D. KEEHN, for defendant in error.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

The question presented by this writ of error is whether the court erred in sustaining the plea of the statute of limitations to the third amended declaration filed by the plaintiff in error.

Plaintiff in error, Charles Hunner, brought an action for libel against defendant in error, based upon an article published on the 15th day of June, 1909, in defendant's newspaper of general circulation in the city of Chicago, and State of Illinois. The original declaration was filed on December 4, 1909, and contained two counts. The first count, after alleging plaintiff's business, and that he was in good standing in the community, proceeds as follows:

"And the plaintiff avers as a statement of extrinsic facts bearing upon the grievances hereinafter mentioned and complained of that on, to-wit, the 8th day of June, 1908, he caused to be filed in the City Court of Aurora in said state a certain bill for divorce against his then wife, one Marjorie Hunner, in and by which said bill for divorce, he charged the said Marjorie Hunner with being guilty of desertion for more than two years, and that afterwards, on the 11th day of June, 1908, the said defendant filed her answer to said bill in said court, denying said charges of desertion and that therein on the 11th day of June, 1908, the said case coming on to be heard upon the said bill of complaint and the answer thereto and upon the testimony of witnesses heard in open court, the court entered its decree in said case finding the issues therein for the complainant, who is plaintiff herein, and ordering the marriage theretofore existing between this plaintiff and his said former wife, dissolved;" etc.

The count then alleges that the defendant well knowing the premises, but wickedly and maliciously intend-

ing to injure the plaintiff and to bring him into public scandal and disgrace, published the following malicious and defamatory matter:

"Aurora Auto Set Decrees Bring Wedding.

"Mrs. Margaret Hunner, former wife of Charles (meaning plaintiff), a wealthy lumber merchant, became the bride of W. H. Holmes, vice president of the Fox River Butter Company, to-day. The bride and bridegroom belong to the exclusive society set of Aurora.

"This wedding is the last of the series in Aurora which has caused much gossip in the last two years. There has been several divorces and remarriages in the younger set as the result of romantic automobile rides.

"The Holmes wedding took place at the home of Charles Shearman, 6422 Normal Avenue. The ceremony was performed by Rev. Henry Hepburn of the Buena Park Presbyterian Church.

"Mrs. Hunner (meaning the former wife of plaintiff) was divorced two years ago, naming women in her bill (meaning to charge that said Mrs. Hunner filed a bill and secured a divorce from the plaintiff, her bill charging plaintiff with being guilty of adultery.)

"At about the same time as the Hunner divorce Mrs. Holmes, a society member, obtained a divorce, making similar charges. She later married W. F. Ferris, who a few months before was divorced by the daughter of W. D. Simpson, a wealthy Aurora manufacturer and politician. Mrs. Ferris charged Ferris was too friendly with other women. Mrs. Ferris also was married soon after the divorce.

"The latest bridal couple departed for the east on their honeymoon."

The second count differs from the first in omitting the innuendo, the charge being, "Mrs. Hunner (meaning the former wife of plaintiff) was divorced two years ago, naming women in her bill."

To this declaration a general and special demurrer was interposed and overruled, but subsequently the demurrer was sustained.

On October 6, 1910, an amendment was filed intended

to correct the declaration in accordance with the rulings of the court on demurrer, and a demurrer was sustained to the declaration as amended.

On November 22, 1910, a second amended declaration was filed to which a general and special demurrer was sustained. Finally, on June 3, 1911, a third amended declaration was filed. The gist of the innuendo in the original and third amended declarations is the same,—that it was meant to charge in the declaration that Mr. Hunner, during his married life with Mrs. Margaret Hunner, was guilty of adultery. The record shows that all of the amendments to the original declaration were filed subsequent to the time of the running of the statute of limitations. To the third amended declaration the defendant filed the general issue and a plea of the statute of limitations. This plea, upon demurrer, was sustained by the court, and the court entered a judgment in accordance with that conclusion.

It is conceded to be the law that if the first declaration states a cause of action and an amendment thereto states the same cause of action, the statute of limitations will not be a bar to the amendment. Bahr v. National Safe Deposit Co., 234 Ill. 101; Chicago City R. Co. v. Hackendahl, 188 Ill. 300; North Chicago St. R. Co. v. Aufmann, 221 Ill. 614. If then the original declaration stated a good cause of action as set forth in the amendment thereto, the court erred in overruling the demurrer to the plea of the statute of limitations.

In interpreting the language of an article to determine whether or not it is libelous, no different construction should be placed upon it than men of ordinary affairs would give it. It is not necessary that an article or publication shall technically charge a crime. If the language used induces readers reasonably to believe that a crime or wrong has been committed, the article is libelous. People v. Fuller, 238 Ill. 116; Ransom v. McCurley, 140 Ill. 626; Schmisseur v. Kreilich, 92 Ill. 347.

Reading the article set out in the original declaration thus construed, we think the article charges the plaintiff in error, Charles Hunner, with adultery. When a publication charges adultery it is libelous *per se,* and no colloquium, inducement or innuendo are necessary. Spencer v. McMasters, 16 Ill. 404; Jacksonville Journal Co. v. Beymer, 42 Ill. App. 443; Elam v. Badger, 23 Ill. 445. As to the purpose and office of the innuendo and the inducement or colloquium see McLaughlin v. Fisher, 136 Ill. 111.

In our opinion, under the foregoing authorities, both counts of the original declaration were good. We think the libel was actionable *per se* as it charged the plaintiff with adultery. The allegation is that it was published by the defendant of and concerning the plaintiff, and that it was false. All the facts necessary to allege were set forth in the original declaration. In our opinion, the court erred in overruling the demurrer to the plea of the statute of limitations, and the judgment is reversed and the cause remanded.

*Reversed and remanded.*